UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

IBELKA VARGAS,

Plaintiff,

-v- No. 12 Civ. 5728 (LTS)(DCF)

CAPITAL ONE FINANCIAL ADVISORS a/k/a Greenpoint Savings Bank, a/k/a Greenpoint Mortgage Funding et al.,

Defendants.

-------------------------------------------------------x

MEMORANDUM ORDER

Plaintiff Ibelka Vargas ("Plaintiff") brings this putative class action against Defendants Capital One Financial Advisors ("Capital One"); Countrywide Financial Corporation; Bank of America, NA; IBM Lender Business Process Services, Inc.; and Seterus (collectively, "Defendants"), alleging that Defendants engaged in discriminatory lending practices in violation of the Fair Housing Act, 42 U.S.C. § 3604; the Equal Credit Opportunity Act, 42 U.S.C. § 1691; and 42 U.S.C. §§ 1981 and 1982. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Capital One moves to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff is bound by a previous class action settlement between Capital One's predecessor in interest and a class of which Plaintiff was a member, and that Plaintiff is therefore barred from bringing this action under the doctrine of res judicata and the settlement release. For the following reasons, Capital One's motion to dismiss is granted.

BACKGROUND

Capital One contends that the court-approved class action settlement in the case of Ramirez v. GreenPoint Mortgage Funding, Inc., 268 F.R.D. 627 (N.D. Cal. 2010), precludes Plaintiff from bringing this action. In 2008, the plaintiffs in Ramirez brought a class action suit in the Northern District of California against GreenPoint Mortgage Funding ("GreenPoint"), an entity that Capital One had acquired in 2006 and closed in 2007. (Am. Compl. ¶¶ 18, 32.) The Ramirez plaintiffs claimed that GreenPoint used a "Discretionary Pricing Policy" that "authorize[d] additional discretionary financing charges and interest rate mark-ups[,]" regardless of objective criteria. (Joseph L. Barloon Declaration in Support of Capital One's Motion to Dismiss, Ex. A, Second Amended Complaint, ¶ 2 (hereinafter "Barloon Decl.").) Plaintiffs in that case alleged that the Discretionary Pricing Policy "ha[d] a widespread discriminatory impact on minority applicants for home mortgage loans, in violation of [the Equal Credit Opportunity Act] and [the Fair Housing Act]." Id. For purposes of the settlement of the action, the United States District Court for the Northern District of California (the "California Court") certified a Settlement Class of plaintiffs consisting of "[a]ll African-American or Hispanic persons throughout the United States to whom GreenPoint originated a residential-secured loan in GreenPoint's wholesale lending channel between January 1, 2004, and January 1, 2008." (Barloon Decl., Ex. F, Final Approved Order, ¶ 4.) It is undisputed that Plaintiff Vargas is within the Ramirez settlement class as defined by the Ramirez Court's order.

The settlement in the Ramirez action was concluded after three years of discovery and motion practice, through work with an impartial mediator. The terms of the settlement included: a total settlement fund of $14,750,000; an award of 25% of the settlement fund, totaling $3,687,500, paid to class counsel, plus actual costs of $425,412.04; service awards of no

more than $8,000 for each original named plaintiff household and $2,000 for each named plaintiff household added by amendment; and one year of foreclosure prevention counseling for all class members. (See Barloon Decl., Ex. C, Stipulation and Agreement of Settlement); Barloon Decl., Ex. F, ¶ 12.) The Settlement Agreement also included a release whereunder "Plaintiffs and each Settlement Class Member . . . are deemed to have fully, finally and forever released all claims, causes of action, or liabilities . . . as alleged or as could have been alleged based upon the facts asserted in the Amended Complaint as to the Released Party."[1] (Barloon Decl., Ex. F, ¶ 9.)

The California Court preliminarily approved the Settlement Agreement and directed that a Notice of the proposed settlement be sent to the class members, via first-class mail, informing them of the Settlement Agreement, its terms, and their options. (Barloon Decl., Ex. B, Order Granting Motion for Preliminary Approval of Class Action Settlement.) The Notice was to be mailed "to Settlement Class Members at the most recent address shown in Defendant's electronic records" (Barloon Decl, Ex C, ¶ 5.2), a method of delivery that the California Court found to "constitute due and sufficient notice to all persons entitled thereto" (Barloon Decl., Ex. B, ¶ 10) and "the best notice practicable [which] fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and any other applicable laws" (Barloon Decl., Ex. F, ¶ 6). The Notice summarized the Ramirez proceedings; defined the claims that were released by the Settlement Agreement; and informed the class members of their legal rights and options, including the rights to make a claim for settlement benefits, to exclude themselves from the settlement, to object, to speak in court about the fairness of the settlement,

---

1 Under the Settlement Agreement, "Released Party" includes all of the entities named as Defendants in this action. (See Barloon Decl., Ex. C, ¶ 2.23.)

and to do nothing.[2] (Christina Peters-Stasiewicz Decl., Ex. A, Notice of Proposed Settlement (hereinafter, "Stasiewicz Decl.").) The Notice also described the settlement class and informed class members of the date, time, and location of the Final Fairness Hearing. (Id.) For those who were interested, the Notice provided the address of a website on which class members could view the text of the Agreement. (Id.)

On January 6, 2011, the settlement administrator mailed this Notice to Plaintiff, a Hispanic woman who received a mortgage from GreenPoint in 2007, at her current address.[3] The Notice was not returned as undeliverable. Plaintiff did not respond to the Settlement Notice. (Stasiewicz Decl., ¶ 7-8.)

United States District Judge Thelton E. Henderson entered his final order and judgment approving the settlement on April 12, 2011, specifically finding, inter alia, that the "Settlement is, in all respects, fair, just, reasonable and adequate to the Settlement Class Members" (Barloon Decl., Ex. F, ¶ 3), that "Plaintiffs[] and Class Counsel have fairly and adequately represented and protected the interests of all of the Settlement Class Members" (id. ¶5), and that "Plaintiffs and each Settlement Class Member . . . are deemed to have fully, finally and forever released all claims, causes of action, or liabilities . . . as alleged or as could have been alleged based upon the facts asserted in the Amended [Ramirez] Complaint as to [the Released Parties]" (id. ¶ 9). The California Court also found appropriate and approved, based on the record before it and findings detailed in its order, specific service awards for named plaintiffs and a fee award to class counsel comprising 25% of the settlement fund, and an award to class

[2] "If you do nothing, you will not receive any money and you will give up your right to make a claim against GreenPoint about the challenged policies and practices." (Stasiewicz Decl., Ex. A, at 1.)

[3] Plaintiff does not dispute that the address used for the mailing was accurate.

counsel of over $425,000 for costs. (Id. ¶ 12.) The final approval order authorizes the Released Parties to file it "in any action that may be brought against [them] in order to support a defense . . . based on principles of res judicata . . . or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim" and enjoins Settlement Class Members "from commencing or prosecuting against [the Released Parties] any action or proceeding in any court or tribunal asserting any of the Released Claims." (Id. ¶¶ 14, 15.)

DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The affirmative defense of res judicata may be the basis of a motion to dismiss a pleading when it is clear from the records properly before the Court that the doctrine applies." Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC, No. 05 Civ. 6757(LTS)(MHD), 2006 WL 3771005, at *1 (S.D.N.Y. Dec. 20, 2006) (citations omitted). "Res judicata applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same [claim, or] cause of action." Cameron v. Church, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

First, "a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002). Judge Henderson, in a court of competent jurisdiction, "dismisse[d] with prejudice the [Ramirez] action on the merits" when he approved the Settlement agreement. (See

Barloon Decl, Ex. F, ¶ 8.) Thus, the Settlement Agreement constitutes a final judgment on the merits for res judicata purposes.

"An individual is a member of a class certified pursuant to Rule 23(b)(3) if plaintiffs follow proper notice procedures and the putative member did not opt out." Gonzalez v. City of New York, 396 F. Supp. 2d 411, 416 (S.D.N.Y. 2005). There is no dispute that Plaintiff is within the definition of the Settlement Class as certified in the Ramirez action and did not opt out of the settlement. Likewise, Defendant Capital One, as owner and/or affiliate of GreenPoint, was in privity with GreenPoint during the Ramirez case for res judicata purposes. (See Am. Compl. ¶ 18; Barloon Decl., Ex. C, ¶ 2.23.) Accordingly, both Plaintiff and Capital One were either parties or in privity with the parties in the Ramirez case.

Finally, the causes of action in this case are identical in all relevant respects to the causes of action in Ramirez. Plaintiffs in Ramirez brought ECOA and FHA claims against GreenPoint based on its 'Discretionary Pricing Policy;' Plaintiff asserts those same claims against Defendants in this case. (See Am. Compl; Barloon Decl., Ex. A, ¶ 1.) Thus, all of the prerequisites for res judicata preclusion are met here.

Plaintiff nonetheless argues that she should be permitted to proceed with the instant action because the Class Representatives and Class Counsel in Ramirez rendered inadequate representation, and the settlement notice violated due process.

## Adequacy of Representation

Plaintiff first asserts that the Ramirez class representatives and counsel did not adequately represent her, and that she thus is not bound by the Ramirez Settlement Agreement. "[M]embers of a class not present as parties to the litigation may be bound by the judgment

where they are in fact adequately represented by parties who are present . . . ." Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc., 439 F.3d 165, 171 (2d Cir. 2006) (quoting Hansberry v. Lee, 311 U.S. 32, 42-43 (1940)). However, "'[f]inal judgments . . . remain vulnerable to collateral attack for failure to satisfy the adequate representation requirement.'" Id. (quoting Matsushita Electric Industrial Co. v. Epstein, 516 U.S. 367, 396 (1996)). "[A]dequacy of representation is measured by two standards." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). "[C]lass members must not have interests that are 'antagonistic' to one another" and "class counsel must be 'qualified, experienced and generally able' to conduct the litigation." Id.

Class Representatives

"[N]ot every variation between the interests of an absent class member and those of the class generally will render the class representatives inadequate. The adequacy-of-representation determination turns on whether the interests of the class were 'compatible' with those of the party attempting to attack the class action judgment collaterally. . . . In assessing compatibility, [the court examines] the alignment of interests of class members." Wolftert, 439 F. 3d at 173 (internal quotation marks and citations omitted). "There is no litmus test for determining when interests of one or more absent class members are sufficiently distinct from those of the class representatives to render those representatives inadequate." Id. The Wolfert court explained that, if the "interests of the absent class members and those of the class representatives were diametrically opposed[,]" the named plaintiffs were not adequately representing the unnamed plaintiffs. Id. (citing Hansberry v. Lee, 311 U.S. 32 (1940) ("[i]n seeking to enforce the agreement the plaintiffs in [the class] suit were not representing the

[collaterally attacking parties] whose substantial interest [was] in resisting performance”)). In Wolfert, for example, where the named Plaintiffs relied solely on California law, the court concluded that, “if [plaintiff was] correct that New York law affords her significant protection not available under California law, she was not adequately represented.” Id.

In her motion opposition papers and subsequent letters to the Court, Plaintiff argues that the Ramirez Class Representatives had interests that were antagonistic to those of the unnamed class members because the Representatives received greater settlement payouts than the unnamed Plaintiffs. (See Pl.’s letters, dated March 4, 2013; March 13, 2013; and August 6, 2013 (Docket Entry Nos. 39, 41, 49.)) However, Plaintiff’s argument is unavailing because the interests of the named and unnamed class members in Ramirez were aligned. As noted above, the California Court made specific findings as to the adequacy of representation in the Ramirez case. Although the named Plaintiffs in Ramirez received service awards in addition to the settlement award that was available to each class member, “such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.” Clark v. Ecolab Inc., Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *9 (S.D.N.Y. May

11, 2010).[4] Plaintiff's objection based on the service awards is, thus, insufficient to demonstrate antagonism of interests warranting relief from the settlement.

Class Counsel

Plaintiff further alleges that class counsel inadequately represented her because, in her opinion, the financial benefit provided to class members by the settlement was inadequate in comparison to the potential outcome of successful litigation, and because a significant proportion of the total amount paid by the Ramirez defendant went to attorneys' fees and costs. "[C]lass counsel must be 'qualified, experienced and generally able' to conduct the litigation." In re Drexel, 960 F.2d at 291 (citation omitted). Here, class counsel were attorneys with extensive experience in class actions, specifically in mortgage lending, lending discrimination, and unfair business practices litigation. (See e.g., Barloon Decl., Exhibit D, Gary Klein Declaration,¶¶ 1-12 (hereinafter "Klein Decl."); Barloon Decl., Exhibit D, Declaration of Wendy Harrison, ¶¶ 1-6 (hereinafter "Harrison Decl.").) Moreover, class counsel decided to settle only

4 Plaintiff also contends in these letters that this case parallels Vassalle v. Midland Funding LLC, 708, F.3d 747 (6th Cir. 2013), and urges the Court to find that the named plaintiffs in Ramirez, like those in Vassalle, did not provide adequate representation to all class members. However, Vassalle is easily distinguishable from the Ramirez settlement. In Vassalle, which was a decision rendered on direct appeal of an order approving a settlement, the Sixth Circuit found the class representation inadequate because the named Plaintiffs had sacrificed the rights of the unnamed Plaintiffs in order to have only their own debts forgiven, relegating the unnamed class members to "perfunctory" settlement benefits. Id. at 755. Similarly, in In re Dry Max Pampers Litig., ___ F.3d ___, 2013 WL 3957060 (6th Cir. August 2, 2013), the Sixth Circuit rejected on direct appeal a settlement in which only the named plaintiffs received cash, unnamed class members, who were not given an opportunity to opt out and were barred from seeking future relief on a class basis, received only "illusory" non-cash benefits, and counsel, who had conducted no discovery and did not respond to a motion to dismiss, received $2.73 million. 2013 WL 3957060, at *7. In Ramirez, by contrast, all Plaintiffs received substantial, equal cash benefits from the Settlement Agreement, aside from the service awards, and the settlement followed years of litigation.

after considering the circumstances of the case: GreenPoint was out of business, and might have become insolvent if the class decided to go to trial, and counsel was unsure of the class' probability of success at trial. (See Klein Decl., ¶¶ 17-19.) These experienced attorneys, the settlement mediator and the California Court all agreed that the settlement was fair and reasonable. (See Klein Decl., ¶ 19; Harrison Decl., ¶¶ 9-10; Barloon Decl. Ex. F; Barloon Decl., Exhibit D, Edward W. Swanson Declaration, ¶ 6 (hereinafter "Mediator Decl.").)

"Absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." Castagna v. Madison Square Garden, L.P., 09 Civ. 10211 (LTS)(HP), 2011 WL 2208614, at *4 (S.D.N.Y. June 7, 2011). Plaintiff does not allege fraud or collusion by the Ramirez class counsel; she only asserts that, because she believes the settlement award of $14.75 million was insufficient, class counsel must have given short shrift to the interests of class members in order to collect a large fee. Plaintiff's argument fails for several reasons. Logically, the greater the settlement fund, the greater the attorneys' fee; therefore, class counsel had every incentive to obtain the largest settlement award possible. In fact, counsel vigorously prosecuted the case for approximately three years, engaging in substantial discovery and motion practice. (See Decl. Klein**,** ¶ 17.) Furthermore, class counsel received only 25% of the settlement award, which is below average for such fee awards. See Clark, 2010 WL 1948198, at *8 ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'"). "[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." Castagna, 2011 WL 2208614, at *4 (internal quotation marks and citation omitted). Counsel's decision to settle in light of the circumstances of the case, and receipt of 25% of the settlement fund as attorneys'

fees, are in no way indicative of fraud or collusion. Accordingly, the Court concludes that class counsel adequately represented the Plaintiff in Ramirez.

Notice

Plaintiff further contends that she is not bound by the Ramirez Settlement Agreement because the settlement notice and method of notification violated due process. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Method of Notification

According to Plaintiff, the method of notification, first-class mail, violated due process because Plaintiff did not receive the notice. However, "[i]t is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." In re Prudential Sec. Inc. Ltd. P'ships Litig., 164 F.R.D. 362, 368 (S.D.N.Y. 1996) aff'd, 107 F.3d 3 (2d Cir. 1996). Furthermore, "[t]he . . . use of first-class mail to send a required notice has regularly been upheld." Wolfert, 439 F.3d 165 (citing Weigner v. City of New York (2d Cir. 1988)). Additionally, the notice was mailed to Plaintiff's current address and not returned as undeliverable. (Stasiewicz Decl., ¶¶ 8-9.) There is a presumption that Plaintiff received the Notice, and Plaintiff's denial of receipt is insufficient to rebut that presumption. See Akey v. Clinton County, 375 F.3d 231, 235 (2d Cir. 2004) ("[w]here, as here, the County

provides evidence that the notices . . . were properly addressed and mailed in accordance with regular office procedures, it is entitled to a presumption that the notices were received. Denial of receipt, without more, is insufficient to rebut the presumption.") Plaintiff's due process argument regarding the method of notice delivery is thus unavailing.

Settlement Notice

Plaintiff further asserts that the settlement notice itself violated due process because: (1) it failed to sufficiently advise class members of the rights that they would relinquish if they did not opt out of the settlement, and (2) the notice was not written in a way that the least sophisticated person would understand. Federal Rule of Civil Procedure 23 requires that "[t]he notice . . . clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiff first contends that the notice does not adequately advise class members of the rights they relinquish if they do not opt out of the settlement. However, the Ramirez settlement notice includes all of the information required by Rule 23. The notice explains: the procedural history of the Ramirez case and each parties' claims and defenses (See Decl. Stasiewicz, Ex. A, Notice, at 1.); who constitutes a settlement class member (id. at 2); that class members may enter an appearance by participating in the final fairness hearing (id. at 3); that members can opt-out of the settlement, and the means of doing so (id. at 4); and what claims will

be released by the settlement (id., at 5). Second, Plaintiff, without citing any authority, contends that, in order to comply with due process, the notice must be written in such a way that the "least sophisticated person" would be able to understand it. The "least sophisticated" person standard, under which debt collection correspondence is evaluated in the context of FDCPA litigation, see, e.g., Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993), in inapposite here.

The relevant standard is that set by Federal Rule of Civil Procedure 23: "plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). Although case law does not define "plain, easily understood language," the Federal Judicial Center's "Plain Language Guide" helps shed light on its meaning. See Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, Federal Judicial Center (2010), http://www.fjc.gov ("use the fewest words to say the most. . . . [A]void a traditional legalistic case caption. . . . [A]void redundancy . . . [I]nclude a non-English (e.g., Spanish) language note about the availability of a copy of the notice in that language. . . . Organize the topics into different sections and place the information in a logical order . . . explain class membership in a simple way.") Here, the Settlement Notice complied with the requirements of Rule 23 and explained the terms of the Settlement in plain, easily understood language, in a manner consistent with the Federal Judicial Center's Plain Language Notice Guide. Neither the Settlement Notice nor its method of delivery violated due process. Accordingly, Plaintiff is not entitled to relief from the provisions of the Ramirez settlement and she is precluded from pursuing the claims she asserts in this case.

CONCLUSION

For the foregoing reasons, Capital One's motion to dismiss the Amended Complaint as against Capital One is granted. This Memorandum Order resolves docket entry number 22. Because there are no other named plaintiffs, Plaintiff's claims for relief against the other defendants are derivative of her precluded claims against Capital One and all of the other defendants are "Released Parties" under the terms of the Ramirez settlement, the action is dismissed in its entirety, with prejudice.

The Clerk of Court is requested to enter judgment dismissing the Amended Complaint and close this case.

SO ORDERED.

Dated: New York, New York
August 15, 2013

/S
LAURA TAYLOR SWAIN
United States District Judge